UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BOBBY DEON FISHER,

       Plaintiff,

                                  Case No. 2:05-cv-38

v.                                   HON. ROBERT HOLMES BELL

CURTIS HALL, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Bobby Deon Fisher, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Curtis Hall, Brian Holman, Sandra Monroe and Badawi Abdellatif. The alleged acts occurred at Alger Maximum Correctional Facility (LMF).

Plaintiff alleges in his complaint that RUO Masters intentionally dropped his handcuff key in front of plaintiff's cell, and walked away. RUO Masters then returned to the front of plaintiff's cell about 15 minutes later, picked up the key and stated to plaintiff, I thought you wanted to get Hall. Plaintiff reported the incident because he believed that he was being set up by Masters. Plaintiff claims that he was brought to defendant Bauman's office for an investigation, but that he was not willing to speak in front of other officers about the incident. On March 17, 2002, plaintiff was escorted to a room where Captain Place was waiting. Captain Place excused the escorting officers and plaintiff informed Captain Place about the incident.

Plaintiff alleges that on March 18, 2002, he fell on the ice while being escorted to the segregation yard. Defendant nurse Monroe was called but refused to examine plaintiff, telling him

instead to get up and stop fooling around. Plaintiff explained that he was in severe pain and that he was not fooling around. Nurse Monroe allegedly stated that if plaintiff did not get up right away, they would just leave him there until he was ready to get up himself. Plaintiff states that he was unable to get up by himself. Plaintiff was then slowly brought up to a seated position by two officers, but he experienced excruciating pain during the process. Plaintiff claims that he was then forced to walk approximately 100 yards to the nursing station while in severe pain. Plaintiff states that it took 30 to 45 minutes to walk the 100 yards. Plaintiff claims that nurse Monroe poked his feet with a needle, but he only felt a dull pain. Nurse Monroe then told plaintiff to walk back to his cell. It was then observed that a large amount of blood was coming from plaintiff where nurse Monroe had poked plaintiff's feet. Nurse Monroe then told plaintiff that she would schedule him to see Dr. Abdellatif.

    Plaintiff was examined later that day by Dr. Abdellatif. Dr. Abdellatif diagnosed plaintiff with severe back spasms and that plaintiff had a large lump at the base of his spine. Plaintiff was prescribed a muscle relaxant and a pain reliever. Dr. Abdellatif scheduled plaintiff for an examination in three days and indicated that if plaintiff was not better by then, an x-ray would be performed to determine the extent of plaintiff's injury.

    On March 18, 2002, defendant Holman told plaintiff that he knew plaintiff had been talking to Captain Place about Masters and that plaintiff would regret it. Plaintiff received his medication but dropped his Motrin pills on the cell floor. Plaintiff states that he knew that the prisoner who occupied the cell before plaintiff was mentally ill and spread feces all over the cell. Plaintiff states that he threw the Motrin pills that fell on the floor in the toilet, but apparently missed one and during the night without thinking kicked that pill underneath his cell door into the hall.

The next morning, defendant Holman and nurse Blackford came to plaintiff's cell. Plaintiff explained what had happened with the Motrin. Defendant Holman found the pill in the hallway and accused plaintiff of trying to sell his pills. Plaintiff asked for more pills. Nurse Blackford told plaintiff that he should have returned the unused pills, but she would see about getting more pills for plaintiff.

Plaintiff was escorted to see Lieutenant Wonch about the key incident. Plaintiff informed Lieutenant Wonch that defendant Holman and defendant Hall were already retaliating against him. After plaintiff cooperated with Lieutenant Wonch, defendants Holman and Hall came to escort plaintiff back to his cell. Defendant Hall, in front of Lieutenant Wonch, allegedly stated, "I hope you were not talking about me."

Plaintiff then wrote a grievance against defendants Holman and Hall for harassing comments and retaliatory actions. Plaintiff claims that 10 to 15 minutes after a March 19, 2002, meeting with Lieutenant Wonch he was escorted to the shower by defendants Holman and Hall. Defendant Holman informed plaintiff that they were going to count his pills and that he would not be receiving any more pain medication. Defendant Holman told plaintiff that plaintiff should keep his mouth shut. When plaintiff returned to his cell, property had been thrown all over the cell and some of his personal property had been destroyed. Defendant Holman confiscated plaintiff's remaining medication and issued a substance abuse misconduct to justify the confiscation.

On March 21, 2002, plaintiff was examined by Dr. Abdellatif. Plaintiff had been forced to endure pain without his medication and his back spasms worsened. Plaintiff asked for more medication and Dr. Abdellatif stated "No, I'm not reordering you any medication, R.U.O. Holman told me about you, you're a trouble maker, plus I don't believe you." Dr. Abdellatif stated that plaintiff did not need any medication. Dr. Abdellatif told plaintiff to use a warm compress and

the lump on plaintiff's back would eventually go away. Further, Dr. Abdellatif stated "you couldn't have been too worried about your spine, you were selling your pills. That's all I have for you."

On April 1, 2002, plaintiff was found not guilty of the misconduct ticket issued by defendant Holman on the charge of substance abuse. Plaintiff made another request for Motrin 800 mg which was denied and plaintiff was told to purchase Ibuprofen at the store. Plaintiff alleges that he was moved out of the unit on March 26, 2002. As a result, plaintiff alleges that he was forced to endure retaliatory and harassing conduct from defendants Holman and Hall between March 14, 2002 and March 26, 2002. Plaintiff has asserted a claim for retaliation against defendants Holman, Hall and Abdellatif and an Eighth Amendment claim against defendants Monroe, Abdellatif and Holman.

Presently before the Court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for failure to demonstrate exhaustion of administrative remedies. In addition, defendants and plaintiff have filed motions for summary judgment. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the

Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants have argued that plaintiff has failed to show total exhaustion of his grievance remedies. A review of the complaint and the attached grievances establishes that plaintiff

filed and exhausted grievances against each of the named defendants regarding each claim asserted in the complaint. Defendant Abdellatif argues that plaintiff did not fully explain his grievances or show that he completed the process. However, a review of the grievance copies attached to the complaint establishes that plaintiff filed grievances against each of the named defendants at each step of the process and that plaintiff attached the responses that he received at each step of the process. Plaintiff has satisfied his burden of showing that he exhausted his grievance remedies.

Plaintiff has asserted Eighth Amendment claims against defendants Dr. Abdellatif, defendant Nurse Monroe and defendant Holman. Defendant Monroe is the only defendant to specifically address this claim. The Supreme Court has held that deliberate indifference to a prisoner's serious illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements: the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore plaintiff's need for medical care. *Estelle*, 429 U.S. at 105; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D. N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). Thus injury resulting from mere negligent conduct is insufficient to state an Eighth

Amendment claim under Section 1983. *Estelle*, 429 U.S. at 105; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986). Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

Complaints that the doctor did not prescribe a specific medication or should have ordered specific tests or negligently failed to provide adequate medical care may state a claim for malpractice under state law but do not state a claim that an inmate's federal rights have been violated. *See*, *Williams v. Duckworth*, 598 F. Supp. 9, 13-15 (N.D. Ind. 1983), *aff'd without opinion*, 749 F.2d 34 (7th Cir. 1984). In *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976), cited in *Estelle*, the Sixth Circuit remarked:

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id*. at 860, n. 5.

The Sixth Circuit recently held that failure to check a prisoner's medical history before treating him does not necessarily rise to the level of "deliberate indifference" for purposes of an Eighth Amendment violation. *Sanderfer v. Nichols*, 62 F.3d 151, 154-155 (6th Cir. 1995).

> The Supreme Court recently clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994). Deliberate indifference, the Court held, requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). The *Farmer* Court added that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted. *Farmer*, 114 S. Ct. at 1982-83.

*Sanderfer*, 62 F.3d at 154-155. As the court in *Estelle v. Gamble* explained, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id.* at 106.

Plaintiff complains that he after he slipped and fell outside the prison, defendant nurse Monroe should have taken his injuries more seriously and not ordered plaintiff to get up and walk. Plaintiff states that he should have been moved by a wheelchair or stretcher. Plaintiff feels that defendant Monroe could have caused him irreversible spinal damage. Nurse Monroe was called to the scene of plaintiff's slip and fall. She observed that plaintiff was able to move and conducted a preliminary examination at the scene. Plaintiff claimed that he could not move. Defendant Monroe called Dr. Abdellatif who told her that if plaintiff did not want to get up he could lay there until he was willing to come to the clinic. When nurse Monroe returned to the scene, plaintiff was already sitting up and he was able to walk with some apparent difficulty to the clinic area. Nurse Monroe examined plaintiff and referred plaintiff to see Dr. Abdellatif that day. Under these circumstances, nurse Monroe did not violate plaintiff's Eighth Amendment rights. Nurse Monroe examined and assessed plaintiff's condition and referred plaintiff to the doctor. In the opinion of the undersigned, nurse Monroe is entitled to be dismissed from this action.

Plaintiff has asserted retaliation claims against defendants Holman, Hall and Abdellatif. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff asserted that Dr. Abdellatif retaliated against him by not providing plaintiff with an x-ray or additional medication. Dr. Abdellatif moved to dismiss this claim under Rule 12(b)(6) standard. Plaintiff has alleged sufficient facts to show that Dr. Abdellatif could have retaliated against plaintiff because plaintiff complained about prison staff. Plaintiff's complaint is sufficient to support a claim.

Defendants Holman and Hall move for dismissal based upon Rule 56 and have provided affidavits in support of their motion. Plaintiff alleges that his cell was searched in retaliation for his complaints about staff. Defendants Holman and Hall indicate that it was not their decision to search plaintiff's cell, but that they were ordered to do so by health care staff to determine the number of pills plaintiff still had in his possession. Plaintiff has failed to show that the search of his cell was motivated by retaliatory conduct. More importantly, no adverse action was taken against plaintiff. At most, plaintiff alleges that defendant Hall made harassing comments.

Defendant Holman did issue a misconduct ticket against plaintiff for substance abuse and violation of posted rules. Defendant was found guilty of the rules violation, but was found not guilty of the substance abuse misconduct. Defendant Holman issued the misconduct for substance abuse because he discovered that plaintiff had pills missing. Plaintiff claims that he flushed the pills down the toilet. The misconduct was issued because there was no evidence that plaintiff flushed his pills. On the other hand, plaintiff was found not guilty because there was no evidence that he sold the pills or used them in an unauthorized manner. In the opinion of the undersigned, defendant Holman, under the circumstances, was correct to issue the misconduct ticket. Plaintiff must take some responsibility for his actions. Assuming that plaintiff did flush the pills down the toilet, that

was an inappropriate action for a prisoner. Plaintiff should know that he must account for his medication. Defendant Holman could not know whether plaintiff was telling the truth or not. Under these circumstances, the issuance of the misconduct ticket was an appropriate response to plaintiff's behavior. Defendant Holman is entitled to dismissal of the retaliation claim.

Moreover, defendants Holman, Hall and Monroe have moved for qualified immunity from liability. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will

establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal pursuant to Rules 12(b)(6) or 56. *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991). In the Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676 (1987). However, once the affirmative defense is raised, plaintiff must come forward with such additional facts as would establish the requisite state of mind). *Id.*

> Accordingly, when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity. For example, if the original complaint alleged that a police officer "used excessive force," and qualified immunity is asserted, then plaintiff would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable. It is in this sense that a heightened standard attaches to plaintiff's pleading.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

In the opinion of the undersigned, when the issue is raised prior to the completion of discovery, the plaintiff must simply respond with specific allegations of fact adequate to survive scrutiny under Rule 12(b)(6) standards. However, when the issue of motive is raised in the context of a motion for summary judgment following an adequate period of discovery, the amount of proof required is that quantum of evidence necessary to allow a jury to return a verdict in plaintiff's favor. *Crutcher v. Commonwealth of Kentucky*, 883 F.2d 502, 504 (6th Cir. 1989); *Hull v. Cuyahoga Valley Joint Vocational School District Bd. of Education*, 926 F.2d 505 (6th Cir.), *cert. denied sub nom.*, *Hull v. Shuck*, 501 U.S. 1261 (1991). *Cf. Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989) (to avert dismissal short of trial, plaintiff must come forward with

something more than inferential or circumstantial support for his allegation of unconstitutional motive). A plaintiff will defeat a defense of qualified immunity if he can present sufficient evidence to prove the existence of a genuine issue of material fact regarding the issue of immunity or if the undisputed facts which show that defendant violated plaintiff's clearly established rights. *Noble*, 87 F.3d at 161.

When ruling on qualified immunity, this court must expressly identify the right at issue and summarize the factual or evidentiary basis for its conclusion. *Noble*, 87 F.3d at 161; *Wegener*, 933 F.2d at 392. In determining whether a clearly established right exists, the district court looks first to the binding precedent of the Supreme Court, then to that of the Sixth Circuit, and then finally to decisions of other jurisdictions. *Wegener*, 933 F.2d at 392; *Masters v. Crouch*, 872 F.2d 1248, 1251-52 (6th Cir.), *cert. denied sub nom*, *Frey v. Masters*, 493 U.S. 977 (1989); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989); *Ohio Civil Service Employees Assn. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). Public officials are expected to be aware of clearly established law specifically governing their conduct. *Long v. Norris*, 929 F.2d 1111, 1115 (6th Cir.), *cert. denied sub nom*, *Jones v. Long*, 502 U.S. 863 (1991).

The United States Supreme Court found that prison officials can be on notice that their conduct violates established law even in novel factual circumstances. *Hope v. Pelzer*, 536 U.S. 730 (2002). In *Hope*, Alabama prison guards were not entitled to qualified immunity from inmate's claim that he was subjected to cruel and unusual punishment when he was handcuffed to a hitching post for a period of seven hours, in a non-emergency situation. *Id.* The Court noted that prison officials knowingly subjected the inmate to a substantial risk of physical harm, unnecessary pain caused by the handcuffs and the restricted position, unnecessary exposure to the heat of the sun, prolonged thirst and taunting, and to a deprivation of bathroom breaks. *Id.* The Court held that

- 14 -

binding Eleventh Circuit precedent, an Alabama Department of Corrections regulation, and a Department of Justice report all informed prison officials of the constitutional infirmity in its use of a hitching post. *Id.*

While defendants bear the initial burden of presenting facts that, if true, would entitle them to immunity, the ultimate burden of proof falls on the plaintiff to show that the defendants violated a right so clearly established that any official in defendants' positions would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Noble*, 87 F.3d at 161; *Wegener*, 933 F.2d at 392.

Defendants Monroe and Hall are entitled to dismissal because their actions did not violate plaintiff's rights. Plaintiff asserted an Eighth Amendment claim against defendant Holman, because defendant Holman confiscated plaintiff's medication. Defendant Holman searched plaintiff's cell at the request of health care staff to determine whether plaintiff was properly using his medication. Defendant Holman discovered that a number of plaintiff's pills were missing. Under these circumstances, it was proper for defendant Holman to confiscate the remaining pills and issue plaintiff a misconduct ticket for substance abuse. It appeared that plaintiff was improperly using his pills or selling his pills. In the opinion of the undersigned, defendant Holman is entitled to dismissal.

Accordingly, it is recommended that defendant Abdellatif's motion to dismiss (docket #16) be denied. It is further recommended that the motion for summary judgment filed by defendants Monroe, Hall and Holman (docket #30) be granted. Finally, it is recommended that the court deny plaintiff's motion to strike (docket #47) as moot and deny plaintiff's motion for summary judgment (docket #50).

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2006