UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BOBBY DEON FISHER,

    Plaintiff,

v.                                          Case No. 2:05-cv-38
                                          HON. R. ALLAN EDGAR

CURTIS HALL, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Bobby Deon Fisher, a prisoner confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendant Dr. Badawi Abdellatif. Defendants Curtis Hall, Brian Holman and Sandra Monroe have been dismissed from this action.

Plaintiff alleges that on March 18 2002, he fell on the ice while being escorted to the segregation yard. Defendant nurse Monroe was called but allegedly refused to examine plaintiff, telling plaintiff to get up and stop fooling around. Plaintiff explained that he was in severe pain and that he was not fooling around. Nurse Monroe allegedly stated that if plaintiff did not get up right away, they would just leave him there until he was ready to get up himself. Plaintiff states that he was unable to get up by himself. Plaintiff was then slowly brought up to a seated position by two officers, but he experienced excruciating pain during the process. Plaintiff claims that he was then forced to walk approximately 100 yards to the nursing station while in severe pain. Plaintiff states that it took 30 to 45 minutes to walk the 100 yards. Plaintiff claims that nurse Monroe poked his feet

with a needle, but he only felt a dull pain. Nurse Monroe then told plaintiff to walk back to his cell. It was then observed that a large amount of blood was coming from plaintiff where nurse Monroe had poked plaintiff's feet. Nurse Monroe then told plaintiff that she would schedule him to see Dr. Abdellatif.

Plaintiff was examined later that day by Dr. Abdellatif. Dr. Abdellatif diagnosed plaintiff with severe back spasms and noted that plaintiff had a lump at the base of his spine. Plaintiff was prescribed a muscle relaxant and a pain reliever. Dr. Abdellatif scheduled plaintiff for an examination in three days and indicated that if plaintiff was not better by then, an x-ray would be performed to determine the extent of plaintiff's injury.

On March 18, 2002, defendant Holman told plaintiff that he knew plaintiff had been talking to Captain Place about Masters and that plaintiff would regret it. Plaintiff received his medication but dropped his Motrin pills on the cell floor. Plaintiff states that he knew that the prisoner who occupied the cell before plaintiff was mentally ill and spread feces all over the cell. Plaintiff states that he threw the Motrin pills that fell on the floor in the toilet, but apparently missed one and during the night without thinking kicked that pill underneath his cell door into the hall.

The next morning, defendant Holman and nurse Blackford came to plaintiff's cell. Plaintiff explained what had happened with the Motrin. Defendant Holman found the pill in the hallway and accused plaintiff of trying to sell his pills. Plaintiff asked for more pills. Nurse Blackford told plaintiff that he should have returned the unused pills, but she would see about getting more pills for plaintiff.

On March 21, 2002, plaintiff was examined by Dr. Abdellatif. Plaintiff had been forced to endure pain without his medication and his back spasms worsened. Plaintiff asked for more

medication and Dr. Abdellatif stated "No, I'm not reordering you any medication, R.U.O. Holman told me about you, you're a trouble maker, plus I don't believe you." Dr. Abdellatif stated that plaintiff did not need any medication. Dr. Abdellatif told plaintiff to use a warm compress and the lump on plaintiff's back would eventually go away. Further, Dr. Abdellatif stated "you couldn't have been too worried about your spine, you were selling your pills. That's all I have for you."

On April 1, 2002, plaintiff was found not guilty of the misconduct ticket issued by defendant Holman on the charge of substance abuse. Plaintiff made another request for Motrin 800 mg which was denied and plaintiff was told to purchase Ibuprofen at the store. Plaintiff alleges that he was moved out of the unit on March 26, 2002. Plaintiff has asserted a claim for retaliation and an Eighth Amendment claim against defendant Abdellatif.

Presently before the Court is defendant Dr. Abdellatif's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff asserts that after he fell he was not immediately examined and was told to get up and walk and that he would not receive any help from staff. Plaintiff asserts that an emergency health team should have been called and that he should have been taken to the hospital immediately. Plaintiff was examined initially on the scene by nurse Monroe who believed that plaintiff experienced "possible muscle tightening in the lower back." Dr. Abdellatiff examined plaintiff later that day and diagnosed plaintiff with a muscle strain. Plaintiff was prescribed a muscle relaxant Robaxin for three days and given 50 tablets of 800mg Ibuprofen to take as needed for pain.

Dr. Abdellatif scheduled plaintiff to be seen again in three days after plaintiff had the opportunity for rest. Plaintiff was observed walking and standing in his prison cell.

The next day, plaintiff's cell was searched after it was discovered that prescribed medication was on the hallway floor outside plaintiff's cell. Some of the pills were in front of another prisoner's cell. It was found that 34 of the 50 pills prescribed to plaintiff were missing. The remaining medication was confiscated from plaintiff by prison guards. Plaintiff explained that he accidently dropped the medication on the floor, but then flushed the medication down the toilet after picking it back up because he felt the medication was spoiled when it hit the floor. Plaintiff believes that he did not pick all the medication up off the floor and accidently kicked one pill into the hallway during the night. Plaintiff indicated that he was unaware that he was required by prison rules to return unused medication.

Dr. Abdellatif saw plaintiff on March 21, 2002. Plaintiff complained of tenderness in his lower back. It was reported by guards that plaintiff had been doing well and had taken a shower that day without any apparent distress. Dr. Abdellatif specifically asked plaintiff about the medication. Plaintiff admitted pushing the pills outside his cell with his feet and flushing most of the pills down the toilet. Dr. Abdellatif suspected that plaintiff was exaggerating his pain level to obtain additional medication which he was giving away or selling to other inmates. Dr. Abdellatif decided, based upon an examination of plaintiff, that no further treatment was necessary. Dr. Abdellatif told plaintiff to rest and purchase over the counter Ibuprofen if needed for pain. Plaintiff made one more complaint about back pain on April 3, 2002, and nurse Galloway instructed plaintiff to purchase Ibuprofen from the prison store. Plaintiff's medical records fail to document any further

problems with his back. It is clear that Dr. Abdellatif provided reasonable medical care to plaintiff and, in the opinion of the undersigned, did not act with deliberate indifference.

Similarly, plaintiff cannot establish a retaliation claim against Dr. Abdellatif. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff argues that he engaged in protected conduct by making complaints to supervisors about other officers who tried to set him up. Plaintiff has failed to show that defendant Dr. Abdellatif took adverse action against him. Dr. Abdellatif provided reasonable medical care. Moreover, plaintiff can present no link between Dr. Abdellatif's medical decisions and plaintiff's complaints. In the opinion of the undersigned, Dr. Abdellatif is entitled to dismissal of this action.

Accordingly, it is recommended that defendant's motion for summary judgment (Docket #110) be granted and this case be dismissed in its entirety. If the court accepts this recommendation, it is further recommended that plaintiff's cross motion for summary judgment (Docket #115) , motion for a protective order (Docket #107), and motions for subpoenas (Docket ## 95 and 99) be denied as moot.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE

Dated: February 15, 2007